## JAMES HEENAN, *Sheriff* AND HAROLD DOMOGALLA, *Assessor of Marion County, v.* DEPARTMENT OF REVENUE

Duane R. Ertsgaard, Marion County Legal Counsel, Salem, represented plaintiffs.

Ted E. Barbera, Assistant Attorney General, Salem, represented defendant.

Decision for plaintiffs rendered June 16, 1972.

CARLISLE B. ROBERTS, Judge.

Plaintiffs appeal from the Department of Revenue's Order No. VL 71-767 which held that certain personal property should be assessed at 40 percent of true cash value for the 1971 tax year. Plaintiffs pray that this court set aside that order and determine that the property in question should be assessed at the stipulated true cash value of $97,900 as of January 1, 1971.

The subject property is a dredge owned by M. P Materials Company, an Oregon corporation, hereinafter referred to as the taxpayer. The dredge is equipped with a hydraulic pump which pulls gravel, sand and silt from lake or river bottoms or flooded gravel pits in which it floats and deposits the severed material at some nearby point through pipes. The dredge itself is made operable by two motors; one operates the cable that pulls the dredge into a desired location and the other runs the hydraulic pump. The hull of the dredge can be disassembled and transported by truck to the various work locations, although the record indicates that the dredge was operating and located in a gravel pit on Turner Road in Marion County, Oregon, during the entire tax year at issue.

In November 1971, the taxpayer filed a petition with the defendant, Department of Revenue, asking it to exercise its general supervisory authority pursuant to ORS 305.090 and ORS 306.111. Plaintiffs allege that the taxpayer had a statutory remedy under ORS 306.520 and therefore they claim that the department's supervisory power was improperly used and its order is invalid.

The issues in this case are: (1) Whether the Department of Revenue had jurisdiction to grant the taxpayer a hearing and issue its order and whether this court has the jurisdiction to hear the question of partial exemption and (2) if this court has jurisdiction, whether the property in question should have been assessed at true cash value or at 40 percent of true cash value.

■■ The question which the taxpayer petitioned the Department of Revenue to answer in November 1971 was the applicability to its property of ORS 308.256 (6)(b), a statute providing partial exemption from taxation. Such a question cannot be placed before the county board of equalization under ORS 309.100, with subsequent review by the Department of Revenue pursuant to ORS 306.515, since that board is not empowered to rule on exemption matters. See *University v. Multnomah Co.*, 31 Or 498, 50 P 532 (1897). As contended by the plaintiffs, the taxpayer's proper remedy was to utilize ORS 306.520, since the act of which it complained was initiated by the assessor. That statute would have required it to petition the Department of Revenue and file copies of the petition with the county clerk for service by the county sheriff upon the county assessor, giving them notice of the issues being raised. This apparently was not done. However, the petition, urging use of the department's general supervisory power, ORS 305.090 and 306.111, was brought to the attention of the plaintiffs by the defendant's hearing officer at the time a date for hearing was set, the issues were known to them, the Marion County Counsel and the Assessor for Marion County appeared at the hearing and participated therein, the hearing was conducted as it would have been if it had arisen under ORS

306.520, under the same hearing officer and, so far as the record shows, the limitation of time stated in ORS 306.520 was met. An appealable written order was issued by the defendant, giving access to this court. (See *Balderee v. Commission*, 2 OTR 142 (1965).) Under these circumstances, the court has jurisdiction to try the matter on the merits. While the defendant was at fault in not requiring the taxpayer to act under ORS 306.520, no rights were lost by the plaintiffs and their cause was harmed in no way thereby, in this instance.

Plaintiffs next contend that the subject dredge should have been assessed at true cash value under ORS 308.256(2) and ORS 308.260 or ORS 308.256(6). The Department of Revenue, on the other hand, alleges that the assessment should be at 40 percent of true cash value pursuant to ORS 308.256(6)(b), consistent with its determination in Order No. VL 71-767.

ORS 308.260 applies to:

"* * * any ship, vessel, or other watercraft * * * which is employed or used as a plant for the reduction or processing but excluding canning, of deep-sea fish, * * *."

The unusual use of commas in the quoted matter has led the plaintiffs to argue that the words "deep-sea fish" do not modify "reduction" or "processing" and that the taxpayer's production of sand and gravel comes within these descriptions.

It is the court's opinion that the language of ORS 308.260 quoted above is intended to be applied only to a watercraft which is employed or used as a plant for the reduction or processing of deep-sea fish, but not to a plant for canning deep-sea fish. The title

to Or Laws 1939, ch 491, confirms this view. Consequently, ORS 308.260 is not applicable to the facts in this suit. This appears to be the obvious and rational meaning of the statute and is adopted in preference to a curious or unaccustomed use of the language.

"Reduce" means to bring to a certain state or condition by grinding, pounding, kneading and rubbing. *People v. Monterey Fish Products Co.*, 195 Cal 548, 234 P 398, 403 (1925). "Processing" effectuates a change in form, contour, chemical combination, physical appearance or otherwise by artificial or natural means. *Corn Products Refining Co. v. Federal Trade Com.*, 144 F2d 211, 219 (7th Cir 1944). "Processing" is a refining, development, preparation or converting of material, especially that in a raw state, into marketable form. *Huron Fish Company v. Glander,* 146 Ohio St 631, 67 NE2d 546, 547, 548 (1946). Clearly, subject dredge neither "processes" nor "reduces" as these terms are commonly used. The record shows that this dredge does not separate or modify in any way the materials removed from the water bottom.

Plaintiffs further contend that if the taxpayer's dredge does not come within ORS 308.260 it falls within the general classification under ORS 308.256(5) because the dredge is a "watercraft not otherwise specifically exempt from taxation nor licensed in lieu thereof * * * and should be assessed at true cash value as required by ORS 308.232. The Department of Revenue contends that the dredge comes within the subsection (6)(b) exception which assesses certain watercraft at 40 percent of true cash value. ORS 308.256(6) reads:

"(6) Watercraft falling under subsection (5)

of this section shall be assessed at true cash value, except as follows:

"(a) Ships and vessels whose home ports are in the State of Oregon and which ply the high seas or between the high seas and inland water ports or termini shall be assessed at four percent of the true cash value thereof.

"(b) All other ships and vessels whose home ports are in the State of Oregon shall be assessed at 40 percent of the true cash value thereof."

 It must be remembered that we are construing a tax statute, the principal purpose of which is to raise revenue. An examination of ORS 308.256 and 308.260 reveals that the mobility of watercraft has been recognized by the legislature; the greater the mobility (i.e., as measured by the ability to avoid Oregon jurisdiction), the greater the tax inducement to do business in Oregon ports or Oregon waters. Hence, complete exemption is accorded to vessels regularly engaged in foreign commercial transportation but full true cash value is assessed upon a floating reduction or processing plant whose activities depend upon utilization of a natural resource within the state's jurisdiction. It would logically follow that a dredge, which produces income by working gravel pits or river bottoms within the state's boundaries, would also be fully assessed, and the court so finds.

The language of subsection (6) of ORS 308.256 tends to support this conclusion. Subsection (6) opens with the general, highly inclusive word "watercraft," a word applicable to a great variety of floating navigable and nonnavigable equipment for water transport, including "ships" and "vessels." As to these, no exemption from tax assessment is permitted, except for two

subcategories set out in paragraphs (a) and (b) of subsection (6), both of which refer to "ships and vessels" (but not to "watercraft") with home ports in Oregon and which differ in that paragraph (a) is restricted to those ships and vessels which ply the high seas and paragraph (b) relates to those ships and vessels which do not ply the high seas. These categories carry a connotation of navigability, and the transport of persons and property. A "ship," in the usual sense, is the name for all large vessels. Cases have been found which include dredges as vessels (for protection of seamen under the Jones Act or the Longshoremen's and Harbor Workers' Compensation Act, for maritime liens and for regulation of lights in navigable streams), but there appears to be no reason for the use of the technical term "home port" in relation to a dredge.

A "home port" is the harbor or port from which a ship hails or, more importantly, from which it is documented. Under the "home port doctrine," a vessel plying the high seas may be taxed at its full value in its home port and in no other jurisdiction, including those ports visited by the vessel during its voyages. *Star-Kist Foods, Inc. v. Byram,* 241 Cal App2d 313, 315-316, 50 Cal Rptr 381 (1966). See Registry & Recording, 46 USC § 17, as to home port registry. The subject property is not documented and the court has found no rationale upon which a dredge, working within the jurisdiction of the state on the assessment day, can be excluded from assessment of its true cash value without a clearer legislative provision expressing such intent than has yet been presented.

The parties, including the assessor, stipulated that the true cash value of the subject property on the

assessment date was $97,900. ORS 308.232 requires that true cash value on the assessment date be used. No legal basis has been shown for the assessor's application of "a depreciation formula to obtain a depreciation value of $73,425," for 1971-1972 as stated in the stipulation.

The defendant's order is set aside and the assessor and sheriff are directed to amend the 1971-1972 assessment and tax rolls to show the true cash value of such property as of January 1, 1971.