# IN THE OREGON TAX COURT

## JOHNSON
### *v.*
## DEPARTMENT OF REVENUE
## FOSTER,
*Intervenor*
## (TC 1334)

William T. Park, Clatsop County District Attorney, Astoria, represented plaintiff.

Ted E. Barbera, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Jeanyse R. Snow, Macdonald, McAllister & Snow, Astoria, represented intervenor.

Helle Rode, Certified Third Year Law Student, representing Lane County Assessor, appeared by Amicus Curiae Brief.

Decision for plaintiff rendered February 9, 1981.

**CARLISLE B. ROBERTS, Judge.**

Arthur Johnson, County Assessor of Clatsop County, appealed from the Department of Revenue's Order No. VL 79-116 (dated March 27, 1979), in which the defendant found that submerged and submersible lands,[1] owned by the State of

---

[1] "Submerged" and "submersible" lands are defined in ORS 274.005(7) and (8). *See also* 274.705(7).

Oregon and leased to John M. Foster, were exempt from property tax assessment by Clatsop County.

The essential facts have been stipulated by the parties. The subject property is designated as Tax Lot No. 401, in the City of Astoria, Clatsop County, Oregon. A part of Tax Lot No. 401 is dry land, owned by John M. Foster, M.D., who operates a medical clinic on the property.

Tax Lot 401 contains 78,408 square feet. The dry land portion is approximately 5,490 square feet. The remainder, 72,918 square feet, owned by the State of Oregon, is submerged or submersible land of the Columbia River and the state has leased 36,155 square feet thereof (approximately 0.83 acres) to Dr. Foster.

In August 1977, Dr. Foster filed a petition with the Department of Revenue to review the act of the County Assessor in taxing him for the leased portion of the submerged and submersible land in Tax Lot No. 401 for the tax year 1977-1978. The County Assessor had appraised and assessed leased Tax Lot 401 property for a substantial number of years, prior to tax year 1977-1978, in the name of predecessors in interest to the intervenor. Dr. Foster received a warranty deed to the dry land portion in September 1976 from Paul Autio, in fulfillment of a contract of sale executed in May 1976. The State of Oregon, through its Division of State Lands, leased the submerged and submersible lands to Dr. Foster for a term commencing August 1, 1976, through July 31, 1996. Article 12 of the lease provided that: "Lessee shall pay all taxes or assessments levied upon the leased land during the term of the lease. * * *"

In his petition to the County Board of Equalization, dated August 11, 1977, Dr. Foster based his request for removal of the tidelands from the tax rolls as follows:

> "I have leased above property from the State Land Board & according to S.L.B. the county has no jurisdiction over these tidelands & therefore cannot tax them. Letter from S.L.B. will follow."

On June 30, 1977, the Clatsop County Board of Equalization affirmed the assessor's assessment of the subject property.[2]

■ ■ Dr. Foster then appealed to the Department of Revenue for property tax exemption on the leased submerged and submersible land and his petition was approved. The rationale of the department was that: (1) Or Const, art VIII, § 2(1)(d), provides that the proceeds of all property granted to the state, without a stated purpose for such funds, must be deposited in the Common School Fund. Submerged and submersible lands are "property granted to the state" pursuant to the United States Constitution (citing *State Land Bd. v. Corvallis Sand & Gravel Co.,* 429 US 363, 97 S Ct 582, 50 L Ed2d 550 (1977), and ORS 274.025). (2) ORS 273.105(3) requires that all monies received by the Division of State Lands (the administrator of state lands) shall be credited to the Common School Fund. (3) The Oregon Supreme Court has held that funds so credited shall be used exclusively for the support and maintenance of the common schools and that any statute purporting, directly or indirectly, to divert Common School Funds from the purpose to which they were dedicated would be unconstitutional. The department's opinion cites *State ex rel Sprague v. Straub,* 240 Or 272, 279, 400 P2d 229, 401 P2d 29 (1965); *Eagle Point Irr. Dist. v. Cowden et al,* 137 Or 121, 124, 1 P2d 605 (1931); *State Land Board v. Lee,* 84 Or 431, 441, 165 P 372 (1917); 38 Op Att'y Gen 20 (1976), and 23 Op Att'y Gen 400 (1948). (4) The prohibition of the diversion of proceeds for any purpose other than the uses of the Common School Fund includes the payment of property taxes on submerged and submersible lands.

This court holds that the defendant's order incorrectly construes the applicable law.

The power of the legislature is plenary in the field of taxation, except as it may be limited by the U. S. Constitution or the Oregon Constitution. The State Land Board, through

---

[2] A county board of equalization is not empowered to rule on property exemption questions. *University v. Multnomah Co.,* 31 Or 498, 50 P 532 (1897); *Heenan and Domogalla v. Dept. of Rev.,* 5 OTR 78 (1972).

its agent, the Division of State Lands, has authority to require users of submerged and submersible land underlying navigable waters in Oregon to enter into leases and to pay rental for their use. (ORS 274.040, 274.915, 307.110; Or Const, art VIII, § 2.) *Brusco Towboat v. State Land Bd.,* 284 Or 627, 589 P2d 712 (1978).

Or Const, art VIII, § 2, describes six sources of the Common School Fund, one of which is:

"(d) The proceeds of all property *granted* to the state, when the purposes of such grant shall not be stated." (Emphasis supplied.)

It is agreed by the parties (and accepted by the court) that this is the only part of art VIII, § 2, which could possibly include submerged and submersible lands.

■ It is well established that Oregon's submerged and submersible lands were not received by a "grant" of the federal government through the Congressional Act admitting Oregon into the Union (Oregon Admission Acts, approved February 14, 1859), or in any other act. The accepted legal concept is that the United States did not "grant" the submerged and submersible lands, located in the new State of Oregon, because of the "equal footing doctrine," recognized upon the admission of a new state.

■ The equal footing doctrine is a constitutional doctrine which holds that a new state, upon admission to the Union, has exactly the same sovereignty as the original thirteen states. In *United States v. Texas,* 339 US 707, 716, 70 S Ct 918, 94 L Ed 1221 (1949), Mr. Justice Douglas explained the equal footing concept in the context of state ownership of the beds of navigable waters:

"* * * [T]he question early arose in controversies between the Federal Government and the States as to the ownership of the shores of navigable waters and the soils under them. It was consistently held that to deny to the States, admitted subsequent to the formation of the Union, ownership of this

property would deny them admission on an equal footing with the original States, since the original States did not grant these properties to the United States but reserved them to themselves. See *Pollard's Lessee v. Hagan* (US) 3 How 212, 228, 229, 11 L ed 565, 573, 574; *Mumford v. Wardwell* (US) 6 Wall 423, 436, 18 L ed 756, 761; *Weber v. State Harbor Comrs.* (US) 18 Wall 57, 65, 66, 21 L ed 798, 801, 802; *Knight v. United Land Asso.* 142 US 161, 183, 35 L ed 974, 981, 12 S Ct 258; *Shively v. Bowlby,* 152 US 1, 26, 38 L ed 331, 341, 14 S Ct 548; *United States v. Mission Rock Co.* 189 US 391, 404, 47 L ed 865, 869, 23 S Ct 606. * * *"

Justice Douglas, continuing, noted that the theory of these decisions was aptly summarized by Mr. Justice Stone in *United States v. Oregon,* 295 US 1, 14, 54 S Ct 610, 79 L Ed 1267 (1934), as follows:

" 'Dominion over navigable waters and property in the soil under them are so identified with the sovereign power of government that a presumption against their separation from sovereignty must be indulged, in construing either grants by the sovereign of the lands to be held in private ownership or transfer of sovereignty itself. See *Massachusetts v. New York,* 271 U. S. 65, 89. For that reason, under the admission of a State to the Union, the title of the United States to lands underlying navigable waters within the States passes to it, as incident to the transfer to the State of local sovereignty, and is subject only to the paramount power of the United States to control such waters for purposes of navigation in interstate and foreign commerce.' "

*See also Shively v. Bowlby,* 152 US 1, 14 S Ct 548, 38 L Ed 331 (1894). The most recent statement in Oregon respecting this doctrine is found in *State Land Bd. v. Corvallis Sand & Gravel Co., supra,* overruling *Bonelli Cattle Co. v. Arizona,* 414 US 313, 94 S Ct 517, 38 L Ed2d 526 (1973).

The error in the defendant's order can be explained as follows:

The original Oregon Constitution, art VIII, § 2, creating the Common School Fund, provided that:

"The proceeds of all the lands which have been, or hereafter may be, granted to this state, for educational purposes [and certain other lands and moneys, but without any reference to submerged and submersible lands] * * * shall be set apart as a separate and irreducible fund, to be called the common school fund * * * which * * * shall be exclusively applied to the support and maintenance of common schools * * *."

In 23 Op Att'y Gen 400 (1948), in Opinion No. 584, the quoted constitutional language, *supra,* was considered, together with 1947 Or Laws ch 382 (a predecessor of the present ORS 307.110.) The question posed was:

" 'In view of such constitutional provision, we request that you advise us if the State Land Board has authority and is required to pay such [real property] taxes from the common school fund.' "

The Attorney General pointed out that taxes follow title, citing *First National Bank v. Marion County,* 169 Or 595, 612, 130 P2d 9, 15 (1942), and *Nehalem Timber Co. v. Columbia Co.,* 97 Or 100, 189 P 212, *reh den* 190 P 318 (1920), so that the state itself would be expected to pay the taxes on property it leased to a taxable person. While recognizing that the state or its branches may be subjected to property taxes, the Attorney General concluded that it would be improper to "divert" such taxes from school funds derived from specified sources, described by the Oregon Constitution as "irreducible." *Eagle Point Irr. Dist. v. Cowden et al, supra,* and *State Land Board v. Lee, supra,* were cited. The Attorney General wrote:

"Therefore, we conclude that the provisions of chapter 382, Oregon Laws 1947, are not applicable to lands owned by the state of Oregon and administered by the State Land Board, where the proceeds or rentals therefrom inure to the benefit of the irreducible school fund. Furthermore, the State Land Board is not authorized to pay taxes from said fund. However, where the State Land Board leases property other than school lands, the proceeds of which do not inure to the irreducible school fund, such property would be subject to taxation under the provisions of chapter 382, Oregon Laws 1947." (23 Op Att'y Gen, *supra,* at 401.)

Defendant's Order No. VL 79-116 relies on the foregoing, although the opinion had no specific reference to submerged and submersible lands. Moreover, after the 1948 opinion, the Or Const, art VIII, § 2, has been substantially amended by H.J.R. No. 7, 1967, adopted May 28, 1968. The words "separate and irreducible" and "exclusively applied" have been deleted and a new Section 5 gives the State Land Board power to invade the fund for management purposes. And, as described above, the submerged and submersible lands continue to be outside the scope of the constitutional provision. Our construction of laws is limited to the pertinent statutes. 23 Op Att'y Gen 400 (1948) does not apply to the facts in this suit.

It is true that the Division of Lands was given statutory authority to lease state-owned submerged and submersible lands in 1963 (ORS 274.915) and, since no provision specifies the disposition of the rentals therefrom, they must be deposited in the Distributable Income Account "within the Common School Fund." ORS 273.105(2)(c) (enacted in 1967). The state, when setting classes of state lands, has always separately classified submerged and submersible lands and school lands. ORS 273.251. These statutory provisions must be read together with ORS 307.110 and every word and phrase must be given legal effect, if possible.[3]

■ ORS 307.110 provides, in part:

"* * * [A]ll real and personal property of this state * * *, held under a lease * * *, by any person whose real property, if any, is taxable * * *, shall be subject to assessment and taxation for the true cash value thereof uniformly with real property of nonexempt ownerships."

There is no tax exemption for state-owned submerged and submersible lands provided in ORS 307.110 or any other Oregon statute which has been found by the court or

---

[3] To arrive at legislative intent in enactment of a statute, it should be read in connection with all statutes relating to the same subject matter and effect should be given to every word, phrase, sentence and section of all such statutes, if possible. *O'Donnell et al v. Scott,* 176 Or 500, 159 P2d 198 (1945).

brought to its attention. The exemption presently claimed is based on superseded language in the Oregon Constitution and questionable reasoning (as applied to submerged and submersible lands) in a superseded opinion of the Attorney General. The Oregon legislature knows how to impose tax on an exempt state property when it wishes, where leases are concerned.[4] It has done so, under the pertinent statutes.

■ The court can find nothing in the statutes that prevents the application of the property tax laws to the leasehold of the intervenor in this suit. The defendant's Order No. VL 79-116 is set aside and held for naught. The county assessor and tax collector shall restore the property leased by Dr. Foster to the assessment and tax rolls. Each party shall bear its or his own costs and disbursements.

---

[4] The state's general exemption of its lands from property taxation is found in ORS 307.090(1). This must be read in connection with ORS 307.110, when the state leases lands. For variations on this theme, see ORS 307.095 and 307.112.