Argued and submitted November 2, 1981, affirmed January 19, 1982

## JOHNSON,
*Plaintiff-Respondent,*

*v.*

## DEPARTMENT OF REVENUE,
*Defendant,*
## FOSTER,
*Intervenor-Appellant.*

(Tax Court No. 1334, SC 27708)

639 P2d 128

Jeanyse R. Snow, Astoria, argued the cause and filed the briefs for intervenor-appellant. With her on the briefs was Robert C. McDonald, Astoria.

William T. Park, Warrenton, argued the cause for the and filed the brief for plaintiff-respondent.

Mary J. Deits, Assistant Attorney General, Salem, filed an Amicus Curiae brief for the Division of State Lands. With her on the brief were Dave Frohnmayer, Attorney General, and Ted E. Ted E. Barbera, Assistant Attorney General, Salem.

Before Denecke, Chief Justice, Tongue, Lent, Linde, Tanzer and Campbell, Justices.

CAMPBELL, J.

Tongue, J. filed a dissenting opinion.

## CAMPBELL, J.

This is an appeal from a Tax Court decision finding certain submerged[1] and submersible[2] lands owned by the State of Oregon and leased to intervenor-appellant John M. Foster subject to ad valorem property taxation by Clatsop County. Intervenor-appellant John M. Foster attacks plaintiff Clatsop County assessor's assessment on the ground that it is contrary to the legislative intent in enacting ORS 307.110, providing for taxation of state-owned lands leased to taxable individuals, and on the ground that it violates the Oregon Constitution Article VIII, section 5. The Clatsop County Board of Equalization affirmed the assessor's action.[3] The Department of Revenue allowed intervenor's petition for review and issued an order requiring removal of the subject lands from the tax rolls. The Tax Court set aside the Department of Revenue's order.[4] Our review of the Tax Court Court's decision is pursuant to ORS 305.445.

The subject property is part of a parcel totalling approximately 78,408 square feet located in Astoria, Clatsop County, Oregon. The parcel is made up of approximately 5,490 square feet of dry land and 72,918 square feet of submerged or submersible land. Intervenor is the owner in fee simple of the dry land. The submerged or submersible land is owned by the State of Oregon. The Division of State

---

[1] ORS 274.005(7) defines submerged lands as follows:

"(7) 'Submerged lands,' except as provided in ORS 274.705, means lands lying below the line of ordinary low water of all navigable waters within the boundaries of this state as heretofore or hereafter established, whether such waters are tidal or nontidal."

[2] ORS 274.005(8) defines submersible lands as follows:

"(8) 'Submersible lands,' except as provided in ORS 274.705 means lands lying between the line of ordinary high water and the line of ordinary low water of all navigable waters and all islands, shore lands or other such lands held by or granted to this state by virtue of her sovereignty, wherever applicable, within the boundaries of this state as heretofore or hereafter established, whether such waters or lands are tidal or nontidal."

[3] A county board of equalization is not empowered to rule on property exemption questions. *University v. Multnomah County,* 31 Or 498, 50 P 532 (1897).

[4] The Tax Court did not expressly find that the state-owned, unleased land was tax exempt. Pursuant to ORS 307.090, such land is expressly exempted from local taxation. Therefore the Clatsop County Assessor had no authority to assess the state-owned unleased land.

Lands, as agent for the State Land Board, leased 36,155 square feet of the state's submerged or submersible land to intervenor for a 20 year term beginning August 1, 1976. Intervenor is obligated under the lease to pay any taxes due on the land. The county assessor assessed and taxed the entire parcel in intervenor's name for the year 1977-78.

The statute at issue in this case is ORS 307.110, which provides:

"(1) Except as provided in ORS 307.120, all real and personal property of this state or any institution or department thereof or of any county or city, town or other municipal corporation or political subdivision of this state, held under a lease or other interest or estate less than a fee simple, by any person whose real property, if any, is taxable, except employes of the state, municipality or political subdivision as an incident to such employment, shall be subject to assessment and taxation for the true cash value thereof uniformly with real property of nonexempt ownerships.

"(2) Each leased or rented premises not exempt under ORS 307.120 and subject to assessment and taxation under this section which is located on property used as an airport and owned by and serving a municipality or port shall be separately assessed and taxed.

"(3) Nothing contained in this section shall be construed as subjecting to assessment and taxation any publicly owned property described in subsection (1) of this section which is:

"(a) Leased for student housing by a school or college to students attending such a school or college.

"(b) Leased to or rented by persons, other than sublessees or subrenters, for agricultural or grazing purposes and for other than a cash rental or a percentage of the crop.

"(4) The provisions of law for liens and the payment and collection of taxes levied against real property of nonexempt ownerships shall apply to all real property subject to the provisions of this section."

Intervenor challenges the application of ORS 307.110 to his lease of state-owned submerged or submersible lands on two grounds. First, intervenor argues that principles of statutory construction must be applied to ORS 307.110 to effectuate the policy underlying the statutory scheme, namely, maximization of the common school fund. Second, intervenor challenges the validity of ORS 307.110

under the Oregon Constitution Article VIII, section 5, requiring that common school funds be managed with "the object of obtaining the greatest benefit for the people of Oregon."

The general rule of ORS Chapter 307 is that all real and tangible personal property in Oregon is subject to assessment and taxation in equal and ratable proportions. ORS 307.030. This rule is subject to exceptions where otherwise provided by law. Other provisions exempt property of the United States, mining claims, property of the state, counties and other municipal corporations, property of nonprofit corporations held for certain public purposes, property owned by municipalities, dock commissions or ports, property of forest protection agencies, and certain other property when used for specified purposes. See ORS 307.040 - .090; 307.115 - .705. If property is leased by an exempt institution, organization or public body to another exempt institution, organization or public body, the latter is also exempt. ORS 307.166.

Several exceptions are provided to these exemptions, among them ORS 307.110, providing that public property leased to a taxable private owner is subject to tax. Other exceptions are provided in ORS 307.095, regarding state-owned property leased to private individuals for parking, and ORS 307.100, regarding public property sold to private individuals under contract.

The policy underlying exemptions from taxation is made clear by a close reading of these sections. When property is used for a public purpose, it is exempt from taxation. Where, however, public property is put to some private use, whether by lease or sale, the policy underlying exemption from taxation no longer applies. Because the legislative intent is clear regarding taxation of state-owned, leased property, we do not see the need for invoking any rules of construction to shed light on the legislative intent. *School District No. 1, Multnomah County v. Bingham,* 204 Or 601, 283 P2d 670, 284 P2d 779 (1955). The only rule of construction applicable to this case is the one which requires exemptions from taxation to be express. *Allen v. Multnomah County,* 179 Or 548, 173 P2d 475 (1946), *State Land Board v. Campbell,* 140 Or 196, 13 P2d 346 (1932).

■ There is no exemption provided in the Oregon statutes for intervenor's leased land. On the contrary, ORS 307.110 expressly subjects his leased land to taxation. Intervenor's land is therefore subject to taxation in accordance with the plenary power of the legislature in the area of taxation, except insofar as that power is limited by the Oregon Constitution or the United States Constitution. *State ex rel Overhulse v. Appling,* 226 Or 575, 585, 361 P2d 86 (1961). The federal constitutional issue is not before us in this case.

Intervenor alleges that ORS 307.110 violates the Oregon Constitution Article VIII, section 5, which provides:

"Section 5. State Land Board; land management. (1) The Governor, Secretary of State and State Treasurer shall constitute a State Land Board for the disposition and management of lands described in section 2 of this Article, and other lands owned by this state that are placed under their jurisdiction by law. Their powers and duties shall be prescribed by law.

"(2) The board shall manage lands under its jurisdiction with the object of obtaining the greatest benefit for the people of this state, consistent with the conservation of this resource under sound techniques of land management."

We review the history of this section to aid in our interpretation of it.

Prior to the 1968 constitutional amendments, the sections of Article VIII pertinent to this discussion provided as follows:

"Section 2. Common School Fund. The proceeds of all the lands which have been, or hereafter may be, granted to this state, for education purposes (excepting the lands heretofore granted to and [aid] in the establishment of a university), all the moneys and clear proceeds of all property which may accrue to the state by escheat or forfeiture; all moneys which may be paid as exemption from military duty; the proceeds of all gifts, devises and bequests, made by any person to the state for common school purposes; the proceeds of all property granted to the state, when the purposes of such grant shall not be stated; all the proceeds of the five hundred thousand acres of land to which this state is entitled by the provisions of an act of congress, entitled "An act to appropriate the proceeds of the sales of the public lands and to grant pre-emption rights, approved

September 4, 1841," and also the five per centum of the net proceeds of the sales of the public lands, to which this state shall become entitled on her admission into the Union (if congress shall consent to such appropriation of the two grants last mentioned) shall be set apart as a separate and irreducible fund, to be called the common school fund, the interest of which, together with all other revenues derived from the school land mentioned in this section, shall be exclusively applied to the support and maintenance of common schools in each school district, and the purchase of suitable libraries and apparatus therefor.

"Section 5. The Governor, Secretary of State, and State Treasurer shall constitute a Board of Commissioners for the sale of school, and university lands, and for the investment of the funds arising therefrom, and their powers, and duties, shall be such as may be prescribed by law. Provided that no part of the University funds, or of the interest arising therefrom shall be expended until the period of ten years from the adoption of this Constitution, unless the same shall be otherwise disposed of by the consent of Congress for common school purposes."

■ These sections dedicated certain lands to the common school fund and narrowly restricted the use of proceeds and interest derived from such lands. The words "exclusive" and "irreducible" mandated that all funds from the constitutionally dedicated lands be used only for the maintenance of schools. Any other use would clearly be unconstitutional. Taxation of such lands was not allowed. *Eagle Point Irrigation District v. Cowden,* 137 Or 121, 1 P2d 605 (1931). *See State ex rel Sprague v. Straub,* 240 Or 272, 279, 400 P2d 229, 401 P2d 29 (1965); 23 Op Atty Gen 400 (1948). It is notable that the submerged and submersible lands at issue in this case are not "constitutionally dedicated lands" under the pre-1968 version of section 2. Submerged and submersible lands are not within any of the listed categories in that section, since they were not "granted" to this state, but rather vested in the state of Oregon on her admission to the Union as a result of the equal footing doctrine and are statutorily dedicated to the common school fund by ORS 273.105(3).[5] The equal footing

---

[5] ORS 273.105(3) provides:

"All other moneys received by the Division shall be credited to the Common School Fund."

doctrine provides that, since the original thirteen states were vested with title to such lands from the English crown upon formation of the Union by virtue of their sovereignty, all states subsequently joining the Union were to be similarly vested. *United States v. Texas,* 339 US 707, 716, 70 S Ct 918, 94 L Ed 1221 (1949), *Pollard's Lessee v. Hagan,* How 212, 11 L Ed 565 (1845). See also ORS 274.025;[6] *State Land Board v. Corvallis Sand & Gravel Co.,* 429 US 363, 50 L Ed 2d 550, 97 S Ct 582 (1977), *on remand,* 283 Or 147, 582 P2d 1352 (1978). Thus, even before the constitutional amendments in 1968, sections 2 and 5 would not necessarily restrict the use of funds deriving from state lands other than those listed in section 2.

The 1968 amendments to the Oregon Constitution, however, radically changed the operation of sections 2 and 5. Sections 2 and 5, as amended, provide:

"Section 2. Common School Fund. (1) The sources of the Common School Fund are:

[substantially similar]

* * *

"(2) All revenues derived from the sources mentioned in subsection (1) of this section shall become a part of the Common School Fund. The State Land Board may expend moneys in the Common School Fund to carry out its powers and duties under subsection (2) of section 5 of this Article. Unexpended moneys in the Common School Fund shall be invested as the Legislative Assembly shall provide by law. Interest derived from the investment of the Common School Fund shall be applied to the support of primary and secondary education as provided under section 4 of this Article.

---

[6] ORS 274.025 provides:

"(1) The title to the submersible and submerged lands of all navigable streams and lakes in this state now existing or which may have been in existence in 1859 when the state was admitted to the Union, or at any time since admission, and which has not become vested in any person, is vested in the State of Oregon. The State of Oregon is the owner of the submersible and submerged lands of such streams and lakes, and may use and dispose of the same as provided by law.

"(2) No person shall acquire any right, title or interest in or to the submersible and submerged lands of any such navigable lakes, or any part thereof, by reliction or otherwise, or by reason of the lowering or drainage of the waters of such lakes, except as provided by statute. [Formerly 274.420]."

"Section 5. State Land Board; land management. (1) The Governor, Secretary of State and State Treasurer shall constitute a State Land Board for the disposition and management of lands described in section 2 of this Article, and other lands owned by this state that are placed under their jurisdiction by law. Their powers and duties shall be prescribed by law. (2) The board shall manage lands under its jurisdiction with the object of obtaining the greatest benefit for the people of this state, consistent with the conservation of this resource under sound techniques of land management." (Brackets added).

The purpose of the 1968 constitutional amendment to Article VIII was to authorize the State Land Board to expend moneys in the common school fund to carry out its land management activities. The preamble to HJR 7 stated:

"Whereas the framers of the Oregon Constitution more than a century ago contemplated the ultimate sale of nearly all lands owned by this state, and the retention of the sale proceeds in the Common School Fund; and

"Whereas vast areas of such lands have not been sold, and conditions prevailing in this century may require the State of Oregon to retain some or all of these lands for an indefinite period; and

"Whereas it is essential that the State of Oregon, through the State Land Board, manage such retained lands with the object of obtaining the highest returns for the people of this state, consistent with the conservation of this resource under sound techniques of land management developed from time to time; and

"Whereas it is essential that the State of Oregon use and invest the assets of the Common School Fund with the object of conferring maximum aid to education in this state, consistent with prudent investment practices prevailing from time to time; and

"Whereas it is essential that these management and investment activities be financed adequately; now, therefore, . . . "

For example, the minutes of the Ways and Means Committee, May 12, 1967, show that HJR 7 was intended to allow the State Land Board to improve ranges in eastern Oregon, and to give it authority to set up leases and receive rental moneys such as the Bureau of Land Management was at that time doing. In the House State and Federal

382

Affairs Committee hearings on HJR 7, February 6, 1967, there was testimony to the following effect:

> "It is the opinion of the Land Board that it is essential to their land management and money management functions, and the resolution would give greater flexibility toward the multiple use of State lands and toward modern investment procedures insofar as the Common School Fund is concerned. The resolution would permit the Board to do whatever it is appropriate to do, under the aegis of the legislature, as land objectives evolve from time to time."

■ ■ Clearly, then, after amendment of Article VIII, there was no longer a requirement that proceeds of common school lands be used "exclusively" for educational purposes. This change rendered all previous cases, including advisory opinions such as the attorney general opinion cited, supra, inapplicable. Section 5, as amended, calls for the formation of the State Land Board to dispose of and manage lands described in section 2, and also lands owned by the state placed under the State Land Board's jurisdiction by law. The powers and duties of the Land Board were and are to be prescribed by law. Section 5(2) contains the requirement that such lands be managed with the object of obtaining the greatest benefit for the people of Oregon. Reading this provision according to its most plain and practical meaning, and consistently with the legislative history, the determination of the proper use of common school funds is a legislative one, subject to the overall requirement that the use have as its goal the greater public benefit. All investments have inherent transaction costs, for example, the costs necessary to leasing include attorney's fees for drafting of lease agreements. The goal imposed by section 5(2), amended to take into account such costs, requires the State Land Board, and the legislature as supervisor, to use lands dedicated to the common school fund in such a way as to derive the greatest net profit for the people of this state. This requirement does not imply that persons supplying services to state-owned land merit no compensation. Just as a lawyer merits his fee for drafting a lease, so a county merits tax revenues for general services it provides to privately leased state lands.

■ Intervenor argues that ORS 307.110 violates the constitutional objective articulated in Article VIII, section

in that it imposes the burden of taxation on the land, including the state's reversionary interest, rather than on the lessee. Intervenor argues that a comparison of ORS 307.110 with ORS 307.060, allowing taxation of federally owned land under lease to private parties, illustrates the distinction rendering ORS 307.110 unconstitutional.

We do not agree. ORS 307.060 provides that federally owned land held under lease by any person shall be taxed according to its full true cash value subject to deduction for restricted use, and that any lien for tax attaches only to the leasehold interest. ORS 307.110(4) applies general lien law to "all real property subject to the provisions of this section." Both provisions, however, impose a tax on publicly owned, leased land to the extent of its true cash value. ORS 307.060 in fact uses the term "full true cash value," whereas ORS 307.110 uses only "true cash value." Taxation based upon property's true cash value does not invalidate these statutes. *Sproul v. Gilbert,* 226 Or 392, 359 P2d 543 (1961). Because ORS 307.110 provides for taxation of "all real property of this state. . . held under lease," and because ORS 307.110(4) makes general lien law applicable, we conclude that the tax is assessed upon the full property value, but the lien resulting from tax is enforceable only against the leasehold interest. The same result is obtained in ORS 307.060 by using the word "full" and by making the extent of the lien express. The Oregon lien laws, naturally enough, do not provide for liens against the state, since state-owned lands are not taxable. There are, however, provisions addressing leased land under ORS 307.110. See ORS 311.405; 311.410. In sum, there is no possibility that a lien could be imposed on the common school fund in the event that a lessee failed to pay taxes due.

In *Sproul v. Gilbert, supra.* this court cited *United States v. Detroit,* 355 US 466, 78 S Ct 474, 2 L Ed 2d 424 (1958) for the proposition that the prohibition on direct taxation of the federal government "does not shield private parties with whom it does business from state taxes imposed on them merely because part or all of the financial burden of the tax eventually falls on the Government." We agree.

We hold that ORS 307.110 does not violate the Oregon Constitution Article VIII, section 5.

Affirmed.

**TONGUE, J.,** dissenting.

I dissent for the reasons stated in the Opinion and Order of the Department of Revenue dated March 27, 1979.