

# Office of the Attorney General
## State of Texas

December 18, 1995

**DAN MORALES**
ATTORNEY GENERAL

Mr. William G. Burnett, P.E.
Executive Director
Texas Department of Transportation
125 East 11th Street
Austin, Texas 78701-2483

Opinion No. DM-370

Re: Whether article VIII, section 7-a of the Texas Constitution applies to the distribution of oil and gas royalties received from highway rights-of-way (RQ-782)

Dear Mr. Burnett:

We have been informed that the State owns, in fee simple, highway rights-of-way in several tracts located within the boundaries of two unitized oil fields.[1] Recently, a

---

[1]Chapter 101 of the Natural Resources Code authorizes, subject to the approval of the Railroad Commission, *see* Nat. Res. Code § 101.001, persons owning or controlling interests in separate property in the same oil or gas field to establish pooled units. *Id.* § 101.011. Establishing pooled units may be accomplished for the following purposes: First, pooling may be necessary to "effect secondary recovery operations for oil or gas," and second, pooling may be necessary for the conservation and use of gas. *Id.*

Prior to approving an agreement for pooled units, the Railroad Commission must find:

   (1)   that the agreement is necessary to accomplish [the two purposes listed above];

   (2)   that it is in the interest of the public welfare as being reasonably necessary to prevent waste and to promote the conservation of oil or gas or both;

   (3)   that the rights of the owners of all the interests in the field, whether signers of the unit agreement or not, would be protected under its operation;

   (4)   that the estimated additional cost, if any, of conducting the operation will not exceed the value of additional oil and gas so recovered, by or on behalf of the several persons affected, including royalty owners, owners of overriding royalties, oil and gas payments, carried interests, lien claimants, and others as well as the lessees;

   (5)   that other available or existing methods or facilities for secondary recovery operations or for the conservation and utilization of gas in the particular area or field concerned or for both are inadequate for the purposes; and

   (6)   that the area covered by the unit agreement contains only that part of the field that has reasonably been defined by development, and that the owners of interests in the oil and gas under each tract of land in the area reasonably defined by development are given an opportunity to enter into the unit on the same

citizen discovered the State's ownership and believes the state lands are inside the boundaries of producing oil fields, although the State never has leased the oil and gas rights to the land.[2] If the State pursues a claim for lost royalties, you assert, it may recover a share of the oil and gas royalties earned from wells located in the two fields.

The citizen contracted with the State to provide information about the State's land in return for a finder's fee of five percent of the amount of any revenue the State recovers as a result of the citizen's information.[3] You suggest, however, that any proceeds the State recovers may be subject to disposition in accordance with article VIII, section 7-a of the Texas Constitution. If so, you believe the State may not pay the citizen a finder's fee from the recovered proceeds. You phrase your question, which is based on these facts, as follows: "[W]hether income from land purchased with constitutionally dedicated funds must be credited to the constitutional fund."

---

(footnote continued)

> yardstick basis as the owners of interests in the oil and gas under the other tracts in the unit.

*Id.* § 101.013(a). The Railroad Commission's decision whether to approve an application to establish a pooled unit is based upon the application and a hearing. *Id.*

[2]Pursuant to section 101.013(a)(6), *see supra* note 1, each owner of an interest within the area to be unitized must receive an offer to join the unit. We understand the Department of Transportation never was notified that an application to unitize the land on which the highway rights-of-way at issue here had been filed and that a hearing on the matter was imminent. *See* Nat. Res. Code § 101.013(a). Furthermore, the Department of Transportation never received an offer to join the unit. *See id.* § 101.013(a)(6); *see also id.* §§ 101.051 - .052.

[3]Section 403.0195 of the Government Code pertains to contracts for information about property the State may be entitled to recover. Subsection (a) authorizes the comptroller of public accounts of the State of Texas, *see* Gov't Code § 403.001(a), to contract with a person for the receipt of information concerning a possible claim the State may be entitled to pursue to recover revenue or other property. The State may not contract to pay the informer more than five percent of the amount of the revenue or the value of the property the State actually recovers as a result of pursuing the claim about which the informer provided information. *Id.* § 403.0195(e). Under subsection (e),

> [i]f the state recovers property in connection with a contract executed under this section and payment of the contractual consideration is not [otherwise] prohibited . . . , an amount not to exceed five percent of the amount of revenue or proceeds from the sale of property recovered shall be deposited to the credit of the comptroller's operating fund for payment of the consideration. The balance of the revenue or proceeds from the sale of property recovered shall be deposited to the credit of the general revenue fund or to any special fund as required by law.

*Cf.* Attorney General Opinion DM-316 (1995) (concluding that Government Code section 403.0195 does not authorize comptroller to contract to pay consideration for information about property recoverable by permanent school fund).

Article VIII, section 7-a of the constitution provides in pertinent part as follows:

> Subject to legislative appropriation, allocation and direction, all net revenues remaining after payment of all refunds allowed by law and expenses of collection derived from motor vehicle registration fees,[4] and all taxes, *except gross production and ad valorem taxes*, on motor fuels and lubricants used to propel motor vehicles over public roadways,[5] shall be used for the sole purpose of acquiring rights-of-way, constructing, maintaining, and policing such public roadways, and for the administration of such laws as may be prescribed by the Legislature pertaining to the supervision of traffic and safety on such roads; and for the payment of the principal and interest on [certain] county and road district bonds or warrants . . . ; provided, however, that one-fourth (¼) of such net revenue from the motor fuel tax shall be allocated to the Available School Fund; and, provided, [that counties will derive certain minimum net revenue from motor vehicle fees]. [Footnotes added.]

Your question assumes that the state acquired the highway rights-of-way about which you ask using funds dedicated by article VIII, section 7-a. We have been informed, however, that the state acquired the highway rights-of-way about which you ask in the 1920s and the 1930s. The electorate did not amend the constitution to add article VIII, section 7-a until 1946. Generally, a constitutional provision must be construed to operate prospectively, not retroactively.[6] *See Grigsby v. Peak*, 57 Tex. 142, 146 (1882); 16 C.J.S.

---

[4]*See* Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 1, 1995 Tex. Sess. Law Serv. 1025, 1494-98 (to be codified at Transp. Code §§ 502.160 - .173); Act of May 19, 1995, 74th Leg., R.S., ch. 350, § 1, 1995 Tex. Sess. Law Serv. 2880, 2880 (amending V.T.C.S. art. 6675a-6c, *repealed by* Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 24(a), 1995 Tex. Sess. Law Serv. 1025, 1871); Act of May 24, 1995, 74th Leg., R.S., ch. 705, § 1, 1995 Tex. Sess. Law Serv. 3719, 3720 (to be codified at V.T.C.S. art. 6675c, § 3).

[5]*See* Tax Code ch. 153.

[6]Article VIII, section 7-a does not indicate on its face that it was intended to operate retroactively. Moreover, upon an examination of statutes predating article VIII, section 7-a, we doubt the electorate so intended. We base our belief on the existence, before the addition of article VIII, section 7-a to the constitution, of detailed instructions for the distribution of the motor vehicle registration fees and gasoline taxes.

Immediately prior to the 1946 amendment to the constitution, the law required the county tax collector to deposit in the county depository, to the credit of the county road and bridge fund, all of the motor vehicle registration funds collected until the amount of funds for the calendar year equaled $50,000. *See* Act of July 1, 1929, 41st Leg., 2d C.S., ch. 88, § 10, 1929 Tex. Gen. Laws 172, 177-78. Then, and until the county had collected an amount equal to $175,000, the county tax collector was to deposit in the county depository 50% of the amount received. *Id.* § 10, at 178. The county tax collector was to remit the remaining 50%, and all amounts over $175,000, to the State Highway Department for the benefit of the State Highway Fund. *See id.* §§ 10 - 10a, at 177-78. The 1929 statute was not amended prior to the 1946 constitutional amendment.

*Constitutional Law* § 36(a), at 109 (1984). Moreover, because the fund established by article VIII, section 7-a did not exist until 1946, it could not have been used to purchase land prior to that date.

We will assume for purposes of this opinion, however, that the highway rights-of-way were purchased with that portion of the receipts from motor vehicle registration fees and motor fuel tax revenues that are constitutionally dedicated to "acquiring rights-of-way, constructing, maintaining, and policing such roadways, and for the administration of such laws as may be prescribed by the Legislature pertaining to the supervision of traffic and safety on such roads . . . ." *See* Tex. Const. art. VIII, § 7-a. If the constitution dedicates money to a particular purpose, that money cannot be allocated to any other purpose. Attorney General Opinion JM-593 (1986) at 2; *see also Gulf Ins. Co. v. James*, 185 S.W.2d 966, 971 (Tex. 1945); *Brazos River Conservation & Reclamation Dist. v. McCraw*, 91 S.W.2d 665, 674 (Tex. 1936); Attorney General Opinion V-107 (1947) at 4. This office previously has stated that the proceeds from a sales tax on gasoline may be used only for the purposes listed in article VIII, section 7-a. *See* Attorney General Opinion JM-593 (1986) at 2.

A court of civil appeals, as well as this office, has determined that interest accruing on a special fund dedicated by the constitution becomes part of the special fund. *Lawson v. Baker*, 220 S.W. 260 (Tex. Civ. App.--Austin 1920, writ ref'd); Attorney General Opinion JM-321 (1985). We are unaware of any judicial decision or attorney general opinion that considers whether oil and gas royalties, or similar earnings, received for the depletion of land the State purchased with monies from a constitutionally established special fund also become part of the special fund. Your question therefore presents a novel issue.

We believe, however, that *Lawson v. Baker* provides, by comparison to the issue before us here, some guidance. In *Lawson* the court of civil appeals considered whether the legislature may separate interest accrued on a constitutionally created special fund from the fund itself and divert the interest to another fund or another purpose. *Lawson*, 220 S.W. at 261-62. The legislature had enacted a statute transferring the interest on constitutionally created special funds to the general revenue fund. *Id.* at 272; *see id.* at 261 (*summarizing constitutional provisions establishing special funds*).

---

(footnote continued)

Also prior to the 1946 constitutional amendment, the law required the state treasurer to deposit into a special fund, called the Highway Gasoline Tax Fund, revenues generated by the gasoline, or motor fuel, tax. Any money in that fund that was not needed to refund overpayments was divided between the Available School Fund and the Highway Fund. One-fourth of the money in the Highway Gasoline Tax Fund was to be deposited in the Available School Fund, and the remaining three-fourths was to be deposited in the Highway Fund.

The court analyzed the enactment under article VIII, section 7 of the Texas Constitution, which prohibits the legislature from diverting "from its purpose[] any special fund that may or ought to come into the treasury." *Id.* at 261. In regard to a constitutionally created special fund, the court said:

> Interest, according to all the authorities, is an accretion to the principal fund earning it, and, unless lawfully separated therefrom, becomes a part thereof. We think it is clear that the interest earned by deposit of special funds is an increment that accrues to such special fund, and any attempt of the Legislature to make such interest a part of the general revenue is futile, in the face of the constitutional provisions creating or dedicating these funds to special purposes.

*Id.* at 272; *see also Oregon ex rel. Sprague v. Straub*, 400 P.2d 229, 233 (Or. 1965) (agreeing with reasoning and holding of *Lawson*); *State Highway Comm'n v. Spainhower*, 504 S.W.2d 121, 126 (Mo. 1973) (citing *Lawson* with approval). The *Lawson* court thus construed the enactment at issue narrowly, so that it did not apply to interest accrued on constitutionally created special funds.[7] 220 S.W. at 273.

The *Lawson* court defined the term "interest" as "an accretion to the principal fund earning it." *See id.* at 272. In its usual sense, "accretion" describes the "slow gradual building up of land by the gradual deposit by the river of a solid material." *See Barakis v. American Cyanamid Co.*, 161 F. Supp. 25, 29 (N.D. Tex. 1958). In relation to the corpus of a fund, "accretion" similarly indicates an increase by natural growth. *See Revloc Supply Co. v. Troxell*, 126 A. 774, 775 (Pa. 1924); *see also* BLACK'S LAW DICTIONARY 19 (5th ed. 1979) (defining "accretion" as "[t]he act of growing to a thing; usually applied to the gradual and imperceptible accumulation of land by natural causes, as out of the sea or a river"); WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 50 (1990) (defining "accretion" as "the process of growth or enlargement by a gradual buildup").

In our opinion, royalties the State receives from the depletion of oil and gas under property the State acquired with constitutionally dedicated funds differ from interest accrued on those funds. First, royalties do not accrue on the special, "principal" fund

---

[7]This office considered a similar question in Attorney General Opinion JM-321: whether the legislature may, by statute or appropriations act, divert to the general revenue fund interest on the fund constitutionally dedicated, in article VIII, section 7-a, to highway purposes. Attorney General Opinion JM-321 (1985) at 2. The opinion first cited article VIII, section 7 of the constitution for the proposition that the legislature may not divert from its purpose any special fund established by the constitution. *Id.* at 3.

Then, relying on the court's decision in *Lawson*, the opinion stated, "[T]he legislature lacks power to enact a statute diverting interest on constitutionally dedicated funds to general revenue." *Id.* at 3-4. Consequently, the opinion concluded, the legislature is unauthorized to enact a statute diverting to the general revenue fund interest on the motor vehicle fees and motor fuel taxes article VIII, section 7-a of the constitution dedicates to highway purposes. *Id.* at 4.

itself; rather, they are received for the depletion of real property, which in this case was purchased with money from the special fund. Second, royalties do not naturally adhere to real property.

Significantly, the legislature has determined by statute that proceeds from the sale of highway right-of-way need not be disposed in accordance with article VIII, section 7-a of the Texas Constitution. Section 202.021(a) of the Transportation Code[8] decrees that proceeds from the sale of any interest the state holds in an acquired (as opposed to a donated)[9] highway right-of-way that is no longer needed for highway purposes must, unless the interest was acquired by a city or county, be deposited into the State Treasury to the credit of the State Highway Fund. Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 1, 1995 Tex. Sess. Law Serv. 1025, 1125 (to be codified at Transp. Code § 202.021(a)); see also id. at 1126 (to be codified at Transp. Code § 202.027).

Furthermore, on its face, article VIII, section 7-a dedicates only motor vehicle registration fees and revenues from gasoline taxes; it does not refer to proceeds on land the state has purchased with the registration fees and gasoline taxes. We note, by contrast, article VII, section 11 of the Texas Constitution, which establishes the Permanent University Fund comprised of, among other things, certain "lands and other property . . ., together with all the proceeds of sales of the same . . . ." The Texas Supreme Court has interpreted article VII, section 11 to require that payments made under an oil and gas lease on land belonging to the Permanent University Fund are "proceeds" that become part of the Permanent University Fund.[10] *State ex rel. Attorney Gen. v. Hatcher*, 281 S.W. 192, 194 (Tex. 1926).

Similarly, article VII, section 4 of the Texas Constitution requires that proceeds from the sale of any land dedicated to the Public Free School fund "be used to acquire other land for the Public Free School fund." In addition, article VII, section 5(a) allots to the permanent school fund "the principal arising from the sale of lands" previously dedicated to the permanent school fund. This office concluded in Attorney General

---

[8]The legislature enacted the original statutory predecessor to Transportation Code section 202.021(a), V.T.C.S. article 6673a, in 1931. *See* Act approved May 5, 1931, 42d Leg., R.S., ch. 99, 1931 Tex. Gen. Laws 170. The 1931 statute provided that money derived from the sale of highway rights-of-way "shall be deposited with the funds from which it was originally taken." *Id.* § 1, at 170.

[9]Section 202.025(1) of the Transportation Code authorizes the governor to convey to a grantor or the grantor's heirs or assignees title to an abandoned highway right-of-way that was donated to the state. *See* Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 1, 1995 Tex. Sess. Law Serv. 1025, 1125 (to be codified at Transp. Code § 202.025(1)).

[10]The court reasoned that oil and gas, while *in situ*, are part of the real property. *State ex rel. Attorney Gen. v. Hatcher*, 281 S.W. 192, 194 (Tex. 1926) (quoting *State v. Snyder*, 212 P. 758 (Wyo. 1923)). Depletion of the minerals constitutes a permanent and final taking of a portion of the real property. *Id.* at 195. Oil and gas royalties are, therefore, "proceeds" from the sale of the land. *Id.*

Opinion O-176 (1939) that income received from the mineral development of river beds within the state must, pursuant to article VII, section 5, along with relevant statutes, be deposited to the credit of the permanent school fund. Attorney General Opinion O-176 (1939) at 2-3. We have located other cases deciding oil and gas royalties must accrue to a special fund, and all of them rely upon constitutional or statutory language similar to that found in article VII, section 4, 5(a), or 11 defining the special fund to include proceeds from the sale of land. *See State ex rel. Fatzer v. Board of Regents,* 269 P.2d 425, 431, 434 (Kan. 1954); *School Dist. No. 23 v. Commissioners of Land Office,* 27 P.2d 149, 150, 151 (Okla. 1933); *cf. Montana ex rel. Dickgraber v. Sheridan,* 254 P.2d 390, 394, 396-97 (Mont. 1953).

If the legislature had wished to propose to the electorate a constitutional amendment that dedicated proceeds received for the use of land purchased with motor vehicle registration fees and revenues from the gasoline tax, it clearly could have done so. In the absence of such a provision, we conclude that article VIII, section 7-a does not require the department to credit to the special fund created in article VIII, section 7-a oil and gas royalties received for the depletion of highway rights-of-way acquired with money from the special fund. Instead, such royalties must be distributed in accordance with applicable statutes.

You do not ask which statute governs the disposition of the oil and gas royalties in this case, although your letter suggests that you desire to know how the proceeds must be disposed. Section 404.094 of the Government Code, which you cite, stipulates that money not statutorily required to be deposited in a special fund, trust fund, or special account outside the general revenue must be deposited in the general revenue fund. Gov't Code § 404.094(b). You believe the proceeds at issue here must be deposited in the State Highway Fund, not in the general revenue funds.

We have located three statutes that may apply in this situation:[11] Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 1, 1995 Tex. Sess. Law Serv. 1025, 1127, 1486 (to be codified at Transp. Code §§ 202.054, 502.051); Act of May 17, 1985, 69th Leg., R.S., ch. 327, § 6, 1985 Tex. Gen. Laws 1389, 1391. Each of these provisions stipulates

---

[11] You state that generally the School Land Board, *see* Nat. Res. Code § 32.011 (creating School Land Board), handles oil and gas leasing on state agency property, including highway rights-of-way. Section 32.157(b) of the Natural Resources Code directs that "[a]ll money collected as bonus, royalty, rental, payments for easements, and permit fees attributable to land covered by this chapter . . . shall be deposited in the special mineral fund of the department . . . owning the land." Chapter 32 of the Natural Resources Code does not apply, however, to oil and gas underlying State-owned land that the State acquired to construct or maintain a highway, "if the closest boundary line of the surface of such land is within 2,500 feet of a well capable of producing oil or gas in paying quantities as of January 1, 1985," *id.* § 32.002(b), unless the oil or gas is leased for the specific purpose of drilling a horizontal well. *Id.* § 32.002(a)(4). You state that the highway rights-of-way about which you ask are within 2,500 feet of a well. Consequently, chapter 32, including the revenue distribution plan provided in section 32.157, does not apply to the proceeds at issue here.

that monies received pursuant to that provision directly or indirectly be deposited in a special fund for the use of the department.[12] *See* Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 1, 1995 Tex. Sess. Law Serv. 1025, 1127 (to be codified at Transp. Code § 202.054) (providing that Texas Department of Transportation must deposit to credit of state highway fund payments department receives from lease of highway right-of-way); *id.* § 1, 1995 Tex. Sess. Law Serv. at 1486 (to be codified at Transp. Code § 502.051) (requiring Texas Transportation Commission and Texas Department of Transportation to deposit all money "received from registration fees in the state treasury to the credit of the state highway fund"); Act of May 17, 1985, 69th Leg., R.S., ch. 327, § 6, 1985 Tex. Gen. Laws 1389, 1391 (declaring that "[a]ny money held by a leaseholder, producer, operator, or purchaser in a suspense, escrow, or other special account on January 1, 1985, which is attributable to unleased state-owned minerals under a highway right-of-way, shall . . . be paid to the commissioner of the General Land office for placement in the special fund for leasing of highway rights-of-way"). You do not ask, and we therefore do not consider, whether Government Code section 403.0195, which authorizes the comptroller to pay five percent of the proceeds of recovered property to the citizen who provided information leading to the recovery of the property, prevails over any of the statutes dedicating oil and gas revenues on highway rights-of-way to the highway fund to the extent of that five percent.

---

[12]While we are not aware of any other statutes that may apply, *cf.* Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 1, 1995 Tex. Sess. Law Serv. 1025, 1125, 1138 (to be codified at Transp. Code §§ 202.021, 222.001 - .002); Nat. Res. Code §§ 34.017 - .018, our search was not exhaustive. Consequently, we do not wish to imply that the three statutes we have listed in the text, Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 1, 1995 Tex. Sess. Law Serv. 1025, 1127, 1486 (to be codified at Transp. Code §§ 202.054, 502.051); Act of May 17, 1985, 69th Leg., R.S., ch. 327, § 6, 1985 Tex. Gen. Laws 1389, 1391, are the only statutes that may apply in this situation.

## S U M M A R Y

Article VIII, section 7-a of the Texas Constitution does not apply to oil and gas royalties received for the depletion of highway rights-of-way that the state acquired using funds dedicated by article VIII, section 7-a.    Rather, the disposition of such royalties is governed by statute.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General