# DELTA AIR LINES, INC.
## *v.*
# DEPARTMENT OF REVENUE
## (TC 3278)

Gregory J. Miner, Bogle & Gates, Portland; Stephen D. Goodwin and Janis M. Wild, Baker, Donelson, Bearman & Caldwell, Memphis, Tennessee; and James W. McBride,

Laughlin, Halle, McBride, Lunsford & Fletcher, Washington D.C., represented plaintiff (Delta).

Marilyn J. Harbur and Joseph A. Laronge, Assistant Attorneys General, Department of Justice, Salem, represented defendant (department).

Decision for defendant rendered October 17, 1995.

## CARL N. BYERS, Judge.

Delta Air Lines, Inc., (Delta) appeals the assessed value of its property for the 1992-93 tax year. The primary issue concerns the correct method of calculating the value of leased property.

Delta is a major national and international airline that carries passengers and freight. Headquartered in Atlanta, Georgia, it serves 163 U.S. cities and 56 cities in 33 foreign countries. Delta has six domestic hub airports (Atlanta, Dallas/Fort Worth, Cincinnati, Salt Lake City, Los Angeles and Orlando), two U.S. international hubs (New York's Kennedy Airport and Portland), and one European hub (Frankfurt, Germany). Its Portland facility serves both international and domestic flights and also serves as a maintenance facility. The property in question consists of 556 aircraft, extensive terminal equipment, spare parts, materials and other miscellaneous property.[1] Delta owns 307 of the aircraft and leases the remaining 249.[2]

Because Delta's integrated business operates across state lines, the accepted method of assessing its property for taxation is to value the entire operating unit and then apportion some of that total value to Oregon based upon a formula. For purposes of taxation, property is defined as:

---

[1] Delta's appraiser indicates that there are 558 aircraft. The department's appraiser indicates there are 556.

[2] "Owns" includes aircraft held under capital leases. Capital leases are leases which, by their terms, are deemed installment contracts for income tax purposes. As used in this opinion, "lease" means an operating lease.

"[A]ll property, real and personal, tangible and intangible, used or held by a company as owner, occupant, lessee, or otherwise, for or in use in the performance or maintenance of a business or service or in a sale of any commodity, * * * but does not include items of intangible property that represent claims on other property including money at interest, bonds, notes, claims, demands and all other evidences of indebtedness, secured or unsecured, including notes, bonds or certificates secured by mortgages, and all shares of stock in corporations, joint stock companies or associations." ORS 308.510.[3]

As a matter of administrative convenience, the entire value of all such property, including leased property, is assessed to the user. ORS 308.517(1). Although the statute allows valuing the property as a unit, it specifically directs the Department of Revenue (department) to:

"[M]ake deductions of the property of the company situated outside the state, and not connected directly with the business thereof, as may be just, to the end that the fair proportion of the property of the company in this state may be ascertained." ORS 308.555.

The issue in this case is the real market value of Delta's operating property as of July 1, 1992. The primary dispute between the parties concerns which methods appropriately measure the value of Delta's leased property. Both parties recognize that the entire value of the leased property is assessable to Delta. However, the parties disagree about how to account for the value of leased property in both the income approach and the stock and debt (market) approach to valuation.

Delta views leases as an equal exchange of value between the lessee and the lessor. Delta contends that it obtains full use and value of the leased aircraft in the operating unit in exchange for the lease payments. Consequently, Delta argues, its operating income reflects the full value of leased property.

By contrast, the department views leases as fractionalized interests in property. The department contends that lease payments are not an expense of operation, but a

---

[3] All references to Oregon Revised Statutes are to the 1991 Replacement Part.

sharing of ownership. Under this view, lease payments represent the lessor's interest and must be accounted for to capture the value of the entire property.

As will be explained more fully below, the court concludes that Delta's view is not correct. Delta errs in focusing on the value of the firm as opposed to the value of the operating assets. *The value of the firm is not the same as the value of the operating unit when the firm does not own all the property used in the operating unit.* This very critical point will be considered in the context of the three approaches to value.

## INCOME APPROACH

In the income approach to value, both appraisers reviewed the history of Delta. Delta's appraiser determined that the average five-year net operating income (NOI) as of December 31, 1991, was $226,790,000. After considering the historical gross revenues and operating margins, he estimated gross revenues of $11,500,000,000 and an operating margin of 7.5 percent. This resulted in operating income of $862,500,000. From this, he deducted $310,500,000 for taxes, leaving $552,000,000 as NOI. Using the direct capitalization method, Delta's appraiser capitalized the NOI at a rate of 12 percent, resulting in an indicated value by the income approach of $4,600,000,000.[4] This method anticipates the same income into perpetuity.

The department's appraiser used a limited-life model. This method estimates the flow of income that may be derived from the existing assets, discounts the income for time, then capitalizes it to obtain an estimate of value. Projecting a cash flow of $806,634,000, based on an average asset life of 13 years and using a capitalization rate of 12.3 percent, the appraiser calculated a net present value of $5,106,441,000. To this, he added a residual value of $322,295,000, for a total of $5,428,736,000. Because that indication of value was based on income exclusive of lease payments, the appraiser also calculated the present value of the lease payments (plus residual value), which was $5,778,594,000. This gave the appraiser a total value of

---

[4] The direct capitalization method uses a single year's income to estimate value.

$11,207,330,000 for the operating unit by the income approach.

The major difference between the two appraisals is the method by which the parties account for leased property. Breaking with a long practice of adding back lease payments, Delta's appraiser now relies upon an analysis of lease transactions as explained in an article by Dr. Joseph Davis.[5] However, that article misses the mark because it focuses on the value of the firm, not the value of the property.

The process of capitalizing a stream of income results in a valuation of the means of producing that income. The gross income produced by an operating unit is a result of capital *and* labor. No one questions that if one capitalized Delta's gross income, the indicated value would reflect the value of both labor and capital. Because labor is not subject to property taxation, it is removed from the calculation of value by deducting labor expenses. Likewise, the statute does not tax cash or cash equivalents, *i.e.*, operating capital. Therefore, all operating expenses are deducted because doing so removes the value of that operating capital from the picture. On the other hand, principal payments, such as mortgage payments, are not deducted because they represent taxable property and deducting them would remove value that is taxable. This principle holds true for lease payments. If lease payments are deducted from operating income, the deduction removes the value of the lessor's interest from the value of the operating unit. Because the statute imposes a tax on all interests in the property, regardless of who holds the property, the valuation method used must reflect all interests in the property.

When valuing leased property, an appraiser has two alternatives. First, the appraiser may treat the property as if it were owned entirely by the firm. Under this method, lease payments are not deducted in calculating NOI but the appraiser deducts amounts for depreciation, interest and

---

[5] Delta's appraiser testified that for approximately 20 years, he used the lease add-back in valuing railroads.

taxes.[6] The second method deducts lease payments to determine net operating income, but adds their capitalized value (and an estimate of the present value of the residual interest) to the capitalized value calculated from the NOI. In a perfect world, either method would produce the same result. In reality, there may be substantial differences due to the different income tax profiles of the lessee and lessor.

■ Delta contends that including current lease payments would be incorrect because it used projected cash flows rather than actual cash flows.

> "The projected improved operating ratios which both appraisers use are applied to actual revenues generated by all airplanes. The current level of lease payments is, therefore, not deducted in arriving at projected cash flows."

Delta's point is not clear to the court. In projecting its cash flows, Delta's appraiser uses NOI as a "surrogate" for net cash flows. He deducts book depreciation as a conservative estimate of required capital expenditures; and

> "The only other adjustment to operating income is the deduction of an estimated income tax * * *."

Because he used NOI as a beginning point, which is after deduction of lease payments, it is inescapable that the projected cash flows reflect deduction of lease payments. His selection of an operating margin is consistent with this view. The historical operating margin (profit years) ranged from 7.1 percent to 7.8 percent. The appraiser selected 7.5 percent. Again, this range of operating margins was achieved after deducting lease payments.

■ Delta argues that it is a mismatch to add back current lease payments to an NOI based on operating experience when the lease payments were much lower.[7] There is no mismatch. The projected income is not based on a period involving lower lease payments. Delta's appraiser used Delta's actual operating revenues, which increased 33 percent from 1990 to 1992. The appraiser indicates that:

---

[6] If the method used does not assume income into perpetuity, the lease payments are added back, but no deduction is made for capital expenditures or depreciation.

[7] In making this argument, Delta is acknowledging that it has significantly increased the number of leased aircraft in the past five years.

"This reflects in large part the addition of certain Pan Am domestic and foreign routes in 1991."

This significant increase also reflects the increase in leased aircraft. Adding back current lease payments to what is essentially projected current income is not a mismatch.

The court finds that the department's approach is acceptable and produces a reasonable result. Clearly, it was error for Delta's appraiser to exclude either method of accounting for lease payments. The error is demonstrated by the examples found in Exhibit AAA-V and the Goodwin article. The court notes that the department's appraiser used the cost of debt to calculate the amount to add back. The court finds this is reasonable because leasing is simply one method of obtaining financing.

## COST APPROACH

It is undisputed that nonoperating assets and non-taxable assets must be removed from consideration when valuing the operating unit for property taxation. Excluding these assets clearly demonstrates that the objective is not to value the firm, but to value the unit of operating assets. In the cost approach to value, the appraisers started with the historical cost of operating assets, including the cost of leased assets. Delta's appraiser, Mr. Gunn, used historical costs less accrued book (accounting) depreciation to arrive at a total cost of $10,673,092,000. The department's appraiser, Mr. Adair, used historical costs less accrued book (accounting) depreciation on terminal property and equipment, but used historic market depreciation on flight equipment. His estimate of cost, including leased property, but less depreciation was $11,750,000,000 (corrected). Because the appraisers used different methods of calculating depreciation, it is difficult to compare their estimates. Further, the department's appraiser included $562,052,000 for materials and supplies not included by Delta's appraiser.

Delta's appraiser calculated functional and economic obsolescence of 56.7 percent. This gave him an indicated value by the cost approach of $4,621,449,000. His method of calculating obsolescence is known as the income deficiency method. That method compares the property's actual rate of return with a market rate of return and deems the difference

between the two to be obsolescence. The income deficiency method is subject to criticism because it is dependent upon the income approach. This dependency deprives the cost approach of any validity as an independent source of market value. Instead, it silver coats the cost approach so that the value no longer reveals cost information of the marketplace, but merely reflects the income approach.[8]

■    If there is any question that this weakness is fatal, all doubt is removed when the method is applied as it was in this case. Delta included the cost of leased property in its total cost of operating property, but deducted lease payments in determining its net operating income. Thus, Delta's method compares an income that does not include all interests in the property with a cost that does include all interests in the property. Because deducting lease payments removes the value of the lessor's interest, this method will *always* result in obsolescence. Delta's methodology is also not consistent with economics. If Delta leased all of its operating property and had zero income *after* deducting the lease payments, the method would indicate the leased property had zero value. This is unreasonable because the lessor would have received lease payments which, when capitalized, would reflect millions of dollars in value.

In rebuttal, the department's appraiser, by way of illustration, used the income deficiency method to calculate obsolescence but without deducting the lease payments as an expense. He used Mr. Gunn's NOI figure of $552,000,000 and added in lease payments of $550,000,000. From this total, he calculated obsolescence of only 16.1 percent. Using his more optimistic income estimates, *i.e.*, NOI of $696,000,000, the method results in only 5.1 percent obsolescence.

## STOCK AND DEBT APPROACH

■■    A third standard appraisal approach is the market or sales comparison approach. However, except in rare instances, there are no usable sales of large utilities. As a

---

[8] The dependency is easy to demonstrate. If the cost of property is doubled to $21,346,184,000, the method still indicates a value of $4,600,103,000 because it merely increases the obsolescence from 56.7 percent to 78.45 percent.

result, appraisers have developed a surrogate measure commonly referred to as the stock and debt approach. The premise of this approach is that for publicly-traded companies, the total value of the company's equity (stock) and liabilities (debt) is the market's estimate of the value of the firm's assets. The method entails a number of assumptions and applications which are fraught with difficulties.[9]

This case is unusual in that Delta issued 20 million shares of preferred stock on July 1, 1992, the assessment date in issue. Delta's appraiser valued this stock based on market prices in the three months following issuance. Excluding nonoperating assets, Delta's appraiser arrived at an indicated value of $6,786,155,000. The appraiser testified that the value of the stock and debt includes the value of leased equipment. Consequently, the appraiser did not add back or make any particular adjustment for leased equipment.

The department's appraiser ignored the preferred stock issue. Nevertheless, he determined the value of the operating property owned by Delta to be $6,774,133,000. To this he added the net present value of the lessor's interests, which he calculated to be $5,259,994,000, for a total value of $12,034,127,000. It is interesting to note that if the net present value of the lessor's interests is added to Delta's stock and debt indicator, Delta's estimated value would be $12,046,149,000.

The court finds that Delta's stock and debt estimate of market value does not include all of the leased property value. As indicated by Delta's own evidence, one reason for leasing is because it constitutes off-balance-sheet financing. The stock and debt of a company reflects only the value of the company's interest in the property and not the value of all taxable interests in the property.

---

[9] Consider, for example, the points of view reflected in three articles located in the *Appraisal of Utilities & Railroad Property for Ad Valorem Taxation*, which came from the proceedings of the 1993 Public Utilities Workshop and was published by Wichita State University: Hal B. Heaton, *Unresolved Issues in the Stock and Debt Approach* 59; Richard L. Gunn, *Unresolved Issues in the Stock and Debt Approach* 50; and Brent Eyre, *Resolving Myths In The Stock & Debt Approach — It Is Meaningful* 31.

Delta argues that a firm leases property to increase shareholder value. Undoubtedly this is true, but it is also irrelevant. The objective of the tax appraisal is to value the operating property, not the value of the firm or shareholder value. The article by Joseph Davis is not directed at determining the best method of valuing operating property, but, instead, focuses on leasing as a method of financing. The author himself notes that:

> "[T]he lease/purchase analysis formula is a decision formula for financing and is not a formula for valuing an asset."

In the context of the stock and debt approach, the fundamental question is whether the balance sheet reflects all the assets used by the firm. The answer is that it does not.

> "Investors do, in fact, value the property interests of the lessee firm, but in so doing, investors recognize that the lessee firm does not own all the interests in operating lease property. As a consequence, investors in the securities of the lessee firm, *value only part of the fee simple interests* in operating lease property. This is consistent with the efficient market hypothesis, because both the lessee firm and the lessor firm own interests in the operating lease property. Since the fee simple interests are divided between the lessee firm and the lessor firm, the lessee firm's securities prices could not rationally include the fee simple interests pertaining to the operating lease property." (Emphasis added.)

If lease obligations are added to the balance sheet at their net present value (as the department's appraiser did), the balance sheet would reflect the value of all taxable interests in the property used by the operating unit. Without adding that value to the balance sheet, the balance sheet reflects only the assets owned by the firm. The obligations under a long-term lease have as much economic significance as they do under a bond or note.[10] Delta's obligations, as reflected in the sample lease document, are every bit as significant and long term as any note.

There are other miscellaneous points of dispute between the parties. Delta argues that it is not reasonable for leased assets to have a greater value than owned assets.

---

[10] The Brealey & Myers Finance Text notes that:

"Long-term lease obligations ought to be regarded as debt whether or not they appear on the balance sheet."

In rebuttal, the department's appraiser testified that the leased assets were newer and more expensive and Delta has purchased or leased $6 billion of new assets in the last five years.

Delta also contends that the department's limited-life model is flawed and that it is a "fallacy to value only assets taxable." The law does not allow the state to tax nonexisting assets or future acquisitions. In fact, the latter point is a criticism which has been leveled against the perpetuity model used by Delta, which assumes replacements to enable operation in perpetuity. Further, in rebuttal, the department's witness used a perpetuity model to demonstrate that including leased property gave an indicated value of $11,437,600,000.

## CONCLUSION

There were other arguments and points of dispute which the court considers unnecessary to resolve or address. Delta's estimate of value was only $5,400,000,000. As stated above, this estimate of value excluded the value of leased operating property. Adding the value of the leased equipment, $5,316,000,000, gives a total indicated value of $10,716,000,000. The department's estimate of the unit value was $10,810,000,000. The court finds the value of the operating unit on July 1, 1992, was $10,810,000,000. Department to recover its statutory costs and disbursements.