# IN THE TAX COURT OF THE
# STATE OF OREGON

## Harold POLLIN
*v.*
## DEPARTMENT OF REVENUE

### (TC 3812)

Arden E. Shenker and Gregory L. Baird, Portland, represented plaintiff (taxpayer).

Marilyn J. Harbur, Assistant Attorney General, Department of Justice, Salem, represented defendant (department).

Decision for defendant rendered January 13, 1997.

**CARL N. BYERS, Judge.**

Plaintiff (taxpayer) appeals the July 1, 1993, assessed value of land leased from the Port of Portland (the Port) and the assessed value of taxpayer's improvements located on that land. ORS 307.110,[1] which subjects publicly owned property to taxation when leased for private use, gives rise to conceptual as well as factual issues.

## FACTS

The Port is a municipal corporation and operates a wide range of facilities, including the Portland International Airport. In 1972, taxpayer and the Port executed a lease for land immediately adjacent to an airport runway. The lease obligated taxpayer to construct improvements to be used as a

---

[1] All references to the Oregon Revised Statutes are to 1993.

full-service Sheraton Motor Hotel. The lease restricts the use of the property to a "motor hotel," unless the lessee obtains the lessor's written consent for another use. The original lease term is 40 years, with a 10-year option. The rent is based on a percentage of income with a minimum annual rent. Taxpayer also agrees to pay any taxes that might be imposed on the premises. The lease requires taxpayer to maintain the improvements to original standards and also specifies a minimum original dollar investment. No modifications can be made to the improvements without the Port's approval. The lease also grants taxpayer an option to obtain use of adjoining land for expansion of the hotel, but that option expired.

Title to the improvements remains with taxpayer until termination of the lease, at which time the Port can elect to accept title or require taxpayer to remove the improvements. The lease also contains provisions for insurance, damage, condemnation, assignment, holding over, default, and other usual terms. Because of the location, taxpayer agrees to abide by FAA rules and the Port's rules governing the airport. The Port expressly reserves the right to maintain flights over the property with the consequent noise. The motor hotel and its restaurant must operate 365 days per year. The Port seeks to maximize its income and can disapprove of particular employees of taxpayer. Subsequent amendments to the original lease pertain primarily to rent and options to expand the hotel area. Taxpayer may pledge the improvements, but not the land, as security for a loan.

## ISSUE

What is the proper valuation of public property leased by a taxable lessee?

## ANALYSIS

ORS 307.110(1) provides as follows:

> "Except as provided in ORS 307.120, all real and personal property of this state or any institution or department thereof or of any county or city, town or other municipal corporation or political subdivision of this state, held under a lease or other interest or estate less than a fee simple, by any person whose real property, if any, is taxable, except

employees of the state, municipality or political subdivision as an incident to such employment, shall be subject to assessment and taxation for the real market or specially assessed value thereof uniformly with real property of nonexempt ownerships."

Although the wording in the statute appears clear, questions arise when principles of property tax assessment are actually applied. Those questions are governed by statutes. Although the statutes reflect general principles of taxation, their construction is governed by legislative intent, particularly as discerned and expressed in Oregon Supreme Court decisions.

## A. *What Is Being Assessed?*

■■ With few exceptions, public property is exempt from property taxation. ORS 307.090. One exception is when public property is leased to a taxable lessee. ORS 307.110(1). Although leased public property becomes taxable, only the lessee's interest in the property is subject to assessment. *See e.g.*, *P.G.E. Company v. Tax Com.*, 249 Or 239, 437 P2d 827 (1968). As stated by the Oregon Supreme Court:

> "Because ORS 307.110 provides for the taxation of 'all real property of this state * * * held under lease,' and because ORS 307.110(4) makes general lien law applicable, we conclude that the tax is assessed upon the full property value, but the lien resulting from tax is enforceable only against the leasehold interest." *Johnson v. Dept. of Rev.*, 292 Or 373, 383, 639 P2d 128 (1982).

It may be helpful to consider, by way of contrast, the assessment of leased private property. In that situation, both the lessor and the lessee are subject to tax. However, for administrative convenience, only one assessment is imposed to tax all of the interests. *Sproul et al v. Gilbert et al*, 226 Or 392, 421, 359 P2d 543 (1961). The assessor disregards the effect of the lease on the value to the owner because "the tax is levied upon the land and is a tax upon all the interests into which the land might be divided." *Swan Lake Mldg. Co. v. Dept. of Rev.*, 257 Or 622, 625, 478 P2d 393 (1971).

■ When publicly owned property is leased to a taxable lessee, the public's interest in the property remains exempt from taxation. Although the public interest remains exempt,

the value of the taxable interest of the lessee is measured by the full value of the property (unless restricted as to use). In effect, the statute makes all of the property taxable, but imposes the liability only upon the interest of the lessee.

B. *What is the Value of the Property Interest Being Assessed?*

■ ORS 307.110(1) provides that public property:

"held under a lease * * * shall be subject to assessment and taxation for the real market or specially assessed value thereof uniformly with real property of nonexempt ownerships."

The Oregon Supreme Court has construed this language to mean that if the taxable user of the property has full use of the property, it is to be taxed at the full value. The court stated:

"If the possessor is making a full use of the property, the value to him is exactly the same as it would be were he the owner. In effect, the lessee is the owner for each tax year he remains in possession under his lease, subject to any diminution in value resulting from restrictions made applicable to him which would not be applicable to an owner in fee." *R.L.K and Co. v. Tax Commission*, 249 Or 603, 606, 438 P2d 985 (1968).

Thus, for tax purposes, the value of the lessee's interest is the value of the property as used.

Taxpayer contends that taxing a lessee's interest at the full value of the property is unconstitutional. Measuring the value of the taxable lessee's interest by the full market value of the property may produce a larger tax, but it is not unconstitutional. It reflects a legislative intent that a private lessee using public property should pay taxes commensurate with the use of the property.

■ In the instant case, there is potential for confusion because taxpayer leases public land but owns the improvements located on the land. To the extent the improvements are subject to restrictions contained in the lease, their taxable value may be diminished. However, only those lease terms that restrict the *use* of the improvements have the potential for reducing their taxable value.

In summary, under ORS 307.110, the lessee's interest in government-owned property is taxed at the full value of the property if the lessee has full use of the property for private gain. Taxation at full value places that use on the same level as other taxable property. Contrary to taxpayer's arguments, the legislature did not intend government lessees to obtain a competitive advantage.

## C. *What Constitutes a Governmental Restriction on Use?*

■■ Any restriction on the use of property imposed by government constitutes a governmental restriction. The most common form of restriction is zoning, which limits the use of property. Such limitations affect the highest and best use of the property and, consequently, affect the property's market value. Although ORS 308.205(2)(d)[2] concerns governmental restrictions under "applicable law or regulation," that statute does not exclude other forms of governmental restrictions. It merely directs that if use of the subject property is restricted "under applicable law or regulation," any comparable sales used in assessing the property for taxation must be subject to like restrictions or be adjusted for such restrictions. As indicated in *Bayridge Assoc. Ltd. Partnership v. Dept. of Rev.*, 321 Or 21, 28, 892 P2d 1002 (1995), governmental restrictions on the use of property may be the result of a statute or a contract, such as a lease or covenant. The restrictions need not be involuntarily imposed and may result in an economic benefit to the taxpayer.

In this case, the provisions in the lease that limit the use of the property are governmental restrictions. For example, the lease specifies that the property can only be used as a Sheraton Motor Hotel, implicitly incorporating conditions required for obtaining and using a license from the Sheraton Motor Hotel chain. The lease also specifies that: (1) taxpayer may have no banner signs or other advertising devices on the property, (2) the improvements must be maintained without

---

[2] ORS 308.205(2)(d) provides:

"If the property is subject to governmental restriction as to use on the assessment date under applicable law or regulation, real market value shall not be based upon sales that reflect for the property a value that the property would have if the use of the property were not subject to the restriction unless adjustments in value are made reflecting the effect of the restrictions."

alteration or improvements, (3) the hotel must be operated every day of the year 24 hours per day, and (4) the Port has a right to maintain air flights over the property. All of these provisions can affect the income or benefits to be derived from the property.

■ Taxpayer claims that the term of the lease is a governmental restriction. Although the term of the lease is a limitation on taxpayer's leasehold interest, it does not limit the *use* of the property. As explained by the Oregon Supreme Court:

> "The state would have the power to impose a tax on all lessees of real property upon the basis of the full value of the land, just as it may, and ordinarily does, tax lessors for the full value of the land. If one were to *buy* a lessee's interest, the price would not be determined by the value of the entire fee but upon the basis of the value of the term. But we are not concerned with a *sale* of property in this case; the evaluation is made for the purpose of *taxation*. The value of property is in its use. The state can tax that value to the person who, for the tax period, is using it. If the possessor is making a full use of the property, the value to him is exactly the same as it would be were he the owner. In effect, the lessee is the owner for each tax year he remains in possession under his lease, subject to any diminution in value resulting from restrictions made applicable to him which would not be applicable to an owner in fee." *R.L.K. and Co.*, 249 Or at 606.

Similarly, restrictions on financing, pledging, and transferring interests are not restrictions on use, but are restrictions on taxpayer's interest in the property. To paraphrase the *RLK and Co.* case, the court is not concerned with the sale or financing of a taxpayer's interest. Rather, it is concerned with the value of the property as it is used.

Having determined what constitutes a governmental restriction, the court must now determine what effect the governmental restrictions have on the market value. This must be determined from the evidence submitted by the parties.

Taxpayer's appraiser, Glanville, appraised the property in 1992 for a lending institution in connection with taxpayer's efforts to finance improvements.[3] His assignment

was to value the leasehold estate, which had 29 years remaining (including the option) with no reversion available. Glanville did not appraise the property specifically for purposes of determining its taxable value under ORS 307.110. Consequently, he missed the target by taking into consideration factors not appropriate for reliance or deduction. For example, his appraisal states:

> "The lease agreement does not permit subordination for mortgage purposes. Thus, the lenders' collateral is a stream of income for the next 29 years, with no interest in the land or the building residual at the end of that lease. This has a substantial effect on the value, because of the short remaining term of this lease, which becomes more precarious as the end of the term approaches."

Elsewhere, the appraisal states that "[e]xtending the term of this lease could have a dramatic impact depending upon the length of the extension and the terms of the renegotiated lease." Glanville recognizes that a leasehold in land has value only when the contract rent is less than market rent, or when the lessee improves the land with a building, adding value to the leased property. In this case, he found that lease rent was market rent. His question of value then was simply the value of the improvements.

Glanville found that the highest and best use of the subject property is as improved. Although he recognized the Port's long-term plan to use the land for airport purposes and move the hotel elsewhere, his analysis of relative values shows that the current use results in the greatest value.

In considering the three approaches to value, Glanville determined that the cost approach was not appropriate because the hotel had been built in stages over time. The different stages resulted in varying degrees of depreciation, which is difficult to measure. In the sales comparison approach, he used eight comparable sales. Only one sale was on leased property and that lease period was so long that the arrangement was viewed as equivalent to a fee ownership. Glanville used these comparable sales to estimate the fee

---

[1] Glanville updated the appraisal for this litigation and derived a value for the property as of July 20, 1993.

value of the property. He deducted from the fee value the value of the leased fee estate, which he calculated using a discounted cash flow for 29 years.

Based on his analysis, Glanville found an indicated fee value of $55,000 per room and a gross income multiplier of 1.65. Applying these indicators, he estimated a full market value for the land, buildings, and personal property of $12 million (rounded). He calculated the value of the leased fee estate at $3.36 million, leaving an estimated value of the leasehold estate of $8.64 million.

In the income approach, Glanville projected income and expenses based upon the history of the subject property. He then compared those figures with standard industry performances published by Pannell, Kerr, and Forster (PKF) in *Trends in the Hotel Industry - 1992*. This permitted him to compare categories of expenses and income on a percentage basis. He also compared income and expense information with other comparable hotels in the Northwest. This latter information is confidential and he did not identify the specific hotel properties. His income approach indicated a real market value of $12 million for the fee estate. Again, because taxpayer does not own the fee estate, Glanville adjusted the discount rate to calculate the leasehold value at $7.1 million.

It should be noted that this indicated value is based on net cash flow after deducting lease payments. Deducting lease payments removes the value of the leased property from the calculation. *Delta Air Lines, Inc. v. Dept. of Rev. (II)*, 13 OTR 372, 377 (1995), *mod and rem'd* 328 Or 596 (1999). In effect, Glanville calculated only the value of taxpayer's interest in the improvements. This is not consistent with ORS 307.110, which measures the tax by the value of the leased land.

In his reconciliation, Glanville determined that the $7.1 million represented the value of taxpayer's leasehold interest. In his testimony, he stated that the value included personal property of $1,505,000, leaving a value for the real property of $5,595,000. Further, he believed that value would have been approximately $1 million less by the end of the tax year, which would be the lowest value during the period measured by ORS 308.205.

Three other appraisal experts testified for taxpayer that Glanville's analysis was correct in methodology and met acceptable professional standards. None of the appraisal experts had an opinion of value for the subject property.

Also testifying for taxpayer were two market experts involved in hotel financing. Both confirmed that the term of the lease was a restriction on the property that affected the risk recognized by the market. One of the witnesses made a "wild stab" at estimating a capitalization rate, but the court considers that estimate too speculative. The other witness was involved in renegotiating the lease for the subject property for later years.

■ Although Glanville's appraisal is thorough, well-written, and consistent with appraisal principles, it was not prepared for this tax appeal and does not focus on the correct value. His appraisal estimates the value of taxpayer's leasehold estate. What is needed is an estimate of the value of the *property* used by taxpayer. The most critical difference between the two estimates is the lease term. Glanville views the limited term as greatly reducing his estimate of value even though it does not affect the use of the property.

There are lease restrictions which might diminish the taxable value, such as being required to use the property only as a Sheraton Motor Hotel. However, no evidence specifically addressed that issue, and the court is unable to determine whether those restrictions had a positive or negative effect on value. In short, taxpayer failed to carry his burden of proof.

Although taxpayer failed to carry his burden of proof, the court will examine the department's appraisal evidence. Under ORS 305.435, if the evidence indicates a greater or lesser amount is appropriate for the assessed value, the court is authorized to make that determination.

Ronald Rodwick, a Multnomah County appraiser, testified for the department that his assignment was to determine the fee simple interest value of the land and buildings. Like taxpayer's appraiser, he found that the highest and best use of the property was as improved and that the cost approach was not appropriate.

Rodwick found only two comparable hotel sales for use in his sales comparison approach. Based on those sales, he derived a value per room of $50,000, resulting in an indicated value of $10,750,000 for the subject property. In the income approach, like Glanville's, he used the subject's actual income and expenses and compared those figures to the PKF industry trends. He also compared the subject's income and expenses with other confidential hotel information. Taxpayer moved to exclude Rodwick's appraisal because he refused to disclose the confidential information on cross examination. The department did not seek a protective order under ORS 305.430(3). Accordingly, the court will exclude the confidential information in evaluating Rodwick's appraisal opinion.

Based on the information available to him, Rodwick calculated an overall capitalization rate of 12 percent, which, when applied to his calculated net income, gave him an indicated value of $11 million for the subject property. In his reconciliation, Rodwick gave the greatest weight to the income approach and concluded that the subject property had a market value of $11 million.

The court finds that Rodwick's appraisal also misses the mark. Rodwick testified that none of the conditions in the lease constituted governmental restrictions. As explained above, when the government is the lessor, lease provisions restricting the use of the property constitute governmental restrictions. Such restrictions can diminish the taxable value of the lessee's interest. If this were not the case, then a lessee would be taxed on the value of use he does not have. The legislative intent is to tax the private lessee for the full value of the property use made available to the lessee, not some hypothetical use prohibited by the lease.

Neither party introduced evidence that persuades the court that the assessed values are erroneous. The total assessed value as of July 1, 1993, is $9,460,000. The assessed value of the land, which is the only property leased and assessable under ORS 307.110, is $1,246,000. This is reasonable in light of the evidence submitted. Similarly, the assessed value of $8,214,000 for the improvements owned by taxpayer is consistent with the evidence submitted. Consequently, the court must sustain the department's Opinion

and Order No. 94-2477. Judgment will be entered in accordance with this opinion. Costs to neither party.